UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| RAHIM SHAFA and | ) | Count One: |
| NAHID TORMOSI SHAFA, | ) | Conspiracy to Commit International |
| a/k/a NAHID TORMOSI, | ) | Money Laundering |
| | ) | (18 U.S.C. § 1956(h)) |
| Defendants | ) | |
| | ) | Counts Two - Four: |
| | ) | International Money Laundering; |
| | ) | Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1956(a)(2)(A) and (2)) |
| | ) | |
| | ) | Count Five: |
| | ) | Conspiracy to Defraud the United States |
| | ) | (18 U.S.C. § 371) |
| | ) | |
| | ) | Counts Six - Eight: |
| | ) | Importing Merchandise Contrary to Law; |
| | ) | Aiding and Abetting |
| | ) | (18 U.S.C. §§ 545 and 2) |
| | ) | |
| | ) | Count Nine: |
| | ) | Receipt and Delivery of Misbranded Drug |
| | ) | (21 U.S.C. §§ 331(c) and 333) |
| | ) | |
| | ) | Money Laundering Forfeiture Allegation: |
| | ) | (18 U.S.C. § 982(a)(1)) |
| | ) | |
| | ) | Import Violation Forfeiture Allegation: |
| | ) | (18 U.S.C. §§ 545, 982(a)(2)(B), 19 U.S.C. |
| | ) | § 1703, & 28 U.S.C. § 2461(c)) |

INDICTMENT

At all times relevant to this Indictment:

## General Allegations

1.      Defendant Rahim Shafa ("SHAFA") was a psychiatrist who owned and operated Novel Psychopharmacology ("Novel").  Novel maintained clinics in Milford and Natick, Massachusetts.

2.      Defendant Nahid Tormosi Shafa a/k/a Nahid Tormosi ("TORMOSI") was the spouse of SHAFA and the office manager for Novel.

3.      SHAFA and TORMOSI resided in Lexington, Massachusetts.

4.      Person 1 is an individual known to the Grand Jury who resided in Hong Kong.

## Federal Food, Drug and Cosmetic Act

5.      The United States Food and Drug Administration ("FDA") is the federal agency responsible for protecting the health and safety of the American public by enforcing the Federal Food Drug and Cosmetic Act ("FDCA"). The FDCA regulates the manufacture, labeling, and distribution of all prescription drugs shipped or received in interstate commerce.

6.      A "drug" is defined by the FDCA as, among other things, an article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of a disease in a human or other animal; an article (other than food) intended to affect the structure or any function of the body of a human or other animal; and an article intended for use as a component of any such articles.  *See* 21 U.S.C. §§ 321(g)(1)(B)-(D).

7.      Under the FDCA, drugs that only may be dispensed upon a written prescription of a licensed practitioner (i.e., prescription drugs) include any "drug intended for use by man which because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe except under the supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1)(A).

8.      Pursuant to the FDCA, a drug is deemed to be "misbranded" if it does not meet certain requirements of the statute, including, among other things, if its labeling fails to bear adequate directions for use, 21 U.S.C. § 352(f)(1). Non-FDA approved prescription drugs do not meet this requirement (or qualify for exemption from it) and are thus considered misbranded. *See* 21 C.F.R. §§ 201.5 and 201.100.

9.      A drug in a package form is misbranded under the FDCA if it does not bear a label providing the name and place of business of the manufacturer, packer, or distributor. 21 U.S.C. § 352(b).

10.     A prescription drug is also misbranded under the FDCA if, at any time prior to dispensing, the label of the drug fails to bear the symbol "Rx only." 21 U.S.C. § 353(b)(4)(A).

11.     The FDA has approved several drugs that contain the active pharmaceutical ingredient disulfiram for the treatment of alcohol dependence. The drugs containing disulfiram that the FDA has approved for use in the United States are in tablet form for oral ingestion. Disulfiram is also available in two additional forms, as a liquid injection and as a pellet implant. The FDA has not approved either the injectable form or the pellet implant for use in the United States.

12.     In addition, the FDA has approved several drugs that contain the active pharmaceutical ingredient naltrexone for alcohol and opioid dependence. The FDA has approved naltrexone for use in the United States in two forms: as a tablet for oral injection and as a liquid for injection. Naltrexone is available in a third form – as a pellet implant – which can be manufactured to last for varying amounts of time in the human body (6 months, 10 months or 12 months, for example). The FDA has not approved the use of the naltrexone pellet implant

(for any amount of time) in the United States, and the sale and receipt of a naltrexone pellet implant in the United States is unlawful.

Overview of Money Laundering Conspiracy

13.     Between approximately January 2008 through approximately January 2018, SHAFA, TORMOSI, and Person 1 conspired to transmit funds from the United States to Hong Kong to purchase naltrexone pellet implants, disulfiram pellet implants and disulfiram injections that were unlawfully shipped from Hong Kong to SHAFA and TORMOSI in the United States.

Manner and Means of the Money Laundering Conspiracy

14.     SHAFA and TORMOSI emailed Person 1 to request naltrexone pellet implants, disulfiram pellet implants and disulfiram injections.

15.     SHAFA and TORMOSI used credit cards -- including a MasterCard ending in -4939 and a Visa ending in -8756 -- to purchase the naltrexone pellet implants, disulfiram pellet implants and disulfiram injections from Person 1 in Hong Kong.

16.     SHAFA and TORMOSI completed order forms for naltrexone pellet implants, disulfiram pellet implants and disulfiram injections, and then transmitted those order forms to Person 1.  The order forms included a section where SHAFA and TORMOSI provided a name, signature and credit card information, among other information.

17.     SHAFA and TORMOSI further accepted packages sent from Person 1 containing naltrexone pellet implants, disulfiram pellet implants and disulfiram injections.

18.     SHAFA and TORMOSI received money from patients in exchange for providing naltrexone pellet implants, disulfiram pellet implants and disulfiram injections.

### Acts in Furtherance of the Money Laundering Conspiracy

19.     Between approximately January 2008 through approximately January 2018, SHAFA, TORMOSI and Person 1 committed and caused to be committed the following acts, among others, in furtherance of the money laundering conspiracy:

a.  On or about June 29, 2016, SHAFA and TORMOSI ordered or caused to be ordered from Person 1 naltrexone pellet implants at a cost of approximately $23,130.  SHAFA and TORMOSI used or caused to be used the -4939 MasterCard for this purchase.  On or about June 30, 2016, Person 1 shipped or caused to be shipped naltrexone pellet implants from Hong Kong to SHAFA and TORMOSI in Massachusetts.

b.  On or about November 12, 2017, SHAFA and TORMOSI ordered or caused to be ordered from Person 1 naltrexone pellet implants, naltrexone injections and disulfiram pellet implants at a cost of approximately $15,308.  SHAFA and TORMOSI used or caused to be used the -8756 Visa for this purchase.  On or about November 17, 2017, Person 1 shipped or caused to be shipped naltrexone pellet implants, naltrexone injections and disulfiram pellet implants from Hong Kong to SHAFA and TORMOSI in Massachusetts.

c.  On or about January 3, 2018, SHAFA and TORMOSI ordered or caused to be ordered from Person 1 disulfiram pellet implants at a cost of approximately $638.  SHAFA and TORMOSI used or caused to be used the -8756 Visa for this purchase.  On or about January 3, 2018, Person 1 shipped or caused to be shipped disulfiram pellet implants from Hong Kong to SHAFA and TORMOSI in Massachusetts.

Overview and Object of Conspiracy to Defraud the United States

20.     From in or about June 2008 through in or about January 2018, SHAFA and Person 1 conspired with each other to defraud the United States, namely Immigration and Customs Enforcement and the FDA, by mislabeling shipments of naltrexone pellet implants, disulfiram pellet implants and disulfiram injections.  The object of the conspiracy was to conceal the contents of the shipments and make them appear as though they were lawful imports.

Manner and Means of the Conspiracy to Defraud the United States

21.     The manner and means by which SHAFA and Person 1 carried out the conspiracy included falsifying shipping documents and packing slips for the shipments.

Overt Acts in Furtherance of the Conspiracy to Defraud the United States

22.     From in or about June 2008 through in or about January 2018, SHAFA and Person 1 committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

a.     On or about June 30, 2016, Person 1 mailed or caused to be mailed a package that was addressed to and received by SHAFA in Massachusetts.  Although that package actually contained naltrexone pellet implants, the shipping documents and packing slip falsely claimed that the package contained plastic beads in plastic tubes, and further misrepresented the value of the package contents.

b.     On or about November 17, 2017, Person 1 mailed or caused to be mailed a package that was addressed to and received by SHAFA in Massachusetts.  Although that package actually contained naltrexone pellet implants, the shipping documents and packing slip falsely claimed that the package contained plastic beads in plastic tubes, and further misrepresented the value of the package contents.

c.      On or about January 3, 2018, Person 1 mailed or caused to be mailed a package that was addressed to and received by SHAFA in Massachusetts.  Although that package actually contained disulfiram implants, the shipping documents and packing slip falsely claimed that the package contained plastic beads in plastic tubes, and further misrepresented the value of the package contents.

## COUNT ONE
### Conspiracy to Commit International Money Laundering
### (18 U.S.C. § 1956(h))

The Grand Jury charges:

23.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

24.     From in or about July 2008 through in or about January 2018, in the District of Massachusetts, and elsewhere, the defendants,

RAHIM SHAFA and NAHID TORMOSI SHAFA, a/k/a NAHID TORMOSI,

conspired with each other and with Person 1 to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, importing merchandise contrary to law, in violation of Title 18, United States Code, Section 545, in violation of Title 18 United States Code, Section 1956(a)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWO
### International Money Laundering; Aiding and Abetting
(18 U.S.C. §§ 1956 and 2)

The Grand Jury further charges:

25.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

26.     On or about June 30, 2016, in the District of Massachusetts, and elsewhere, the defendant,

### RAHIM SHAFA,

transported, transmitted and transferred, and attempted to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, importing merchandise contrary to law, in violation of Title 18, United States Code, Section 545.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

<u>COUNT THREE</u>
International Money Laundering; Aiding and Abetting
(18 U.S.C. §§ 1956 and 2)

The Grand Jury further charges:

27.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

28.     On or about November 13, 2017, in the District of Massachusetts, and elsewhere, the defendant,

RAHIM SHAFA,

transported, transmitted and transferred, and attempted to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, importing merchandise contrary to law, in violation of Title 18, United States Code, Section 545.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT FOUR
### International Money Laundering; Aiding and Abetting
(18 U.S.C. §§ 1956 and 2)

The Grand Jury further charges:

29.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

30.     On or about January 3, 3018, in the District of Massachusetts, and elsewhere, the defendant,

### RAHIM SHAFA,

transported, transmitted and transferred, and attempted to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, importing merchandise contrary to law, in violation of Title 18, United States Code, Section 545.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

COUNT FIVE
Conspiracy to Defraud the United States
(18 U.S.C. § 371)

The Grand Jury further charges:

31.   The Grand Jury re-alleges and incorporates by reference paragraphs 1-12 and 20-22 of this Indictment.

32.   From in or about July 2008 through in or about January 2018, in the District of Massachusetts, and elsewhere, the defendant,

RAHIM SHAFA,

conspired with Person 1 to defraud the United States and any agency thereof, namely, United States Immigration and Customs Enforcement and the United States Food and Drug Administration, in any manner and for any purpose, to wit: impeding, impairing, obstructing, and defeating the lawful functions of such agencies.

All in violation of Title 18, United States Code, Section 371.

COUNTS SIX - EIGHT
Importing Merchandise Contrary to Law; Aiding and Abetting
(18 U.S.C. §§ 545 and 2)

The Grand Jury further charges:

33.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-12 and 22 of this Indictment.

34.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendant,

RAHIM SHAFA,

did fraudulently and knowingly import and bring into the United States any merchandise contrary to law and receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, as set forth below:

| COUNT | DATE | MERCHANDISE |
|---|---|---|
| SIX | June 30, 2016 | Naltrexone Pellet Implants |
| SEVEN | November 17, 2017 | Naltrexone Pellet Implants |
| EIGHT | January 3, 2018 | Disulfiram Pellet Implants |

All in violation of Title 18, United States Code, Sections 545 and 2.

## COUNT NINE
### Receipt and Delivery of Misbranded Drug
(21 U.S.C. §§ 331(c) and 333(a)(2))

The Grand Jury further charges:

35.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-12 and 22 of this Indictment.

36.     On or about June 30, 2016, in the District of Massachusetts, and elsewhere, the defendant,

### RAHIM SHAFA,

with the intent to defraud and mislead, received in interstate commerce misbranded prescription drugs, to wit: naltrexone pellet implants, and thereafter delivered and proffered delivery of such misbranded prescription drugs for pay and otherwise.

All in violation of Title 21, United States Code, Sections 331(c) and 333(a)(2).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

37.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1956(a)(2) and (h), set forth in Counts One through Four, the defendants,

RAHIM SHAFA and
NAHID TORMOSI SHAFA, a/k/a/ NAHID TORMOSI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.

38.     If any of the property described in Paragraph 37, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendants --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 37 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

IMPORT VIOLATION FORFEITURE ALLEGATION
(18 U.S.C. §§ 545 and 982(a)(2)(B), 19 U.S.C. § 1703, and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

39.     Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Section 545, set forth in Counts Six through Eight, the defendant,

RAHIM SHAFA,

shall forfeit to the United States: (1) pursuant to Title 18, United States Code, Section

982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or

indirectly, as the result of such offenses; (2) pursuant to Title 18, United States Code, Section

545 and Title 28, United States Code, Section 2461(c), merchandise introduced into the United

States in violation of Section 545, or the value thereof; and (3) pursuant to Title 19, United States

Code, Section 1703 and Title 28, United States Code, Section 2461(c), any vessel and its cargo

employed, or attempted to be employed, to defraud the revenue or to smuggle merchandise in

violation of law. The property to be forfeited includes, but is not limited to, the following:

    a. $553,714.50, to be entered in the form of a forfeiture money judgment.

40.     If any of the property described in Paragraph 39, above, as being forfeitable, as a

result of any act or omission of the defendant --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without
         difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States

Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value

of the property described in Paragraph 39 above.

All pursuant to Title 18, United States Code, Sections 545 and 982(a)(2)(B), and Title 28,

United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
JOHN T. MULCAHY
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: AUGUST____6__, 2020
Returned into the District Court by the Grand Jurors and filed.

/s/ Dawn M. King 4:34pm
_____
DEPUTY CLERK