UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | No. 4:20-cr-40021-TSH-1 |
| **RAHIM SHAFA** | |

## DEFENDANTS' FURTHER MOTION TO PERMIT EXPERT TESTIMONY

In response to this Honorable Court's further reservations regarding the qualification and relevance of Dr. Fabian Saleh's proposed expert testimony during its colloquy with the parties on February 2, 2024 after the jury was excused for the weekend, Rahim Shafa and Nahid Tormosi (collectively "the Defendants") submit this further supplemental response in support of their proposed expert witness, Dr. Fabian Saleh .

### A. Dr. Saleh is Eminently Qualified to Testify as An Expert Witness in this Case

While Fabien Saleh is not fellowship trained in substance use disorders and is not currently treating patients with substance use disorders, he has been trained in the diagnosis, treatment, and management of patients suffering from various substance use disorders; and has had extensive clinical experience regarding the same. During his residency at Johns Hopkins, he worked on the inpatient Motivated Behaviors Unit where he saw patients with all forms of substance use disorders with or without co-existing mental health and/or behavioral problems. While in his last year at Johns Hopkins, he took part in a fellowship in Motivated Behaviors where he worked with juveniles presenting with substance use disorders. As a fellow in both child and adolescent psychiatry and forensic psychiatry, Dr. Saleh worked both clinically and forensically with

individuals presenting with substance use disorders including, but not limited to, opioid use disorders.

Dr. Saleh is board certified and recertified in both adult and forensic psychiatry, where topics pertaining to the certification *include assessing and treating substance use disorders.* He has personally diagnosed and treated hundreds of patients who suffered from substance use disorders, presenting alone or in combination with various mental disorders (e.g. bipolar disorder, schizophrenia), intellectual disabilities, and sexual disorders.

From 2007 to 2008, Dr. Saleh was the Associate Medical Director in Psychiatry at UMass Memorial Medical Motivating Youth Recovery (MYR), operated by Community Health Link (CHL). This was a twenty-bed acute detoxification and stabilization program for adolescents ages 13-17 years old. The program provided medically monitored detoxification, comprehensive assessment and diagnosis, treatment, and aftercare planning and referral. From 2008 to 2012, Dr. Saleh worked at the MGH's West End Clinic as a treating psychiatrist. There, he evaluated and treated hundreds of patients presenting with substance use disorders alone or in combination with various mental illnesses. Specifically, while at the West End Clinic, he prescribed Naltrexone and various other medications for substance use disorders.

Dr. Saleh has provided consultation on clinical cases of patients presenting with various violent behaviors. As part of the diagnostic and differential diagnostic assessment, a determination needed to be made to what extent a person's problematic behaviors (sexual or non-sexual) were due to a sexual disorder, mental illness, or substance use disorder. Moreover, Dr. Saleh has written dozen of publications and over 100 lectures to students, residents, and legal professionals where most, if not all, have addressed addiction directly or indirectly. An abridged list of lectures and

publications is appended as **Exhibit A,** which was previously submitted to this Court in prior related filings.

Dr. Saleh has been retained on approximately 1,500 cases and has testified on about 300 occasions in numerous courts, including federal courts, courts within the Commonwealth, and others across the United States. A list of selected cases where Dr. Saleh provided court testimony in cases that dealt directly or indirectly with addiction, risk management, and treatment, and where addiction was the driving force behind the respondent's or defendants behaviors, is appended as **Exhibit B**.

Dr. Saleh has been qualified as an expert in the field of psychiatry and has rendered court testimony on the above issues. As an Independent Medical Examiner, he has testified over the last twenty years on a regular basis on issues pertaining to psychopharmacology, substance use, and its relationship to psychological functioning and behaviors. Further, to maintain his state licenses (He is currently licensed in MA, MD, FL, MI, and Virginia), Dr Saleh must complete and pass Continued Medical Exams. A selected list of recent exams is appended as **Exhibit C**.

### B. Dr Saleh's Opinions Are Directly Relevant

In addition to his certifications, publications/lectures/studies, Dr Saleah has had practical and clinical experience in treating substance abuse disorder, to include prescribing Naltrexone. In its opening, as well as in its examination of its witnesses in its case in chief the government has, *inter alia*, raised questions about the efficacy and duration of Naltrexone implants to imply Dr Shafa was engaged in some form of fraudulent scheme[1]. As such, this is not simply a case about allegations of illegally smuggling non-approved medications. Dr Saleh's testimony is necessary

---

[1] Indeed, in his grand jury testimony case agent Derek Roy several times stated an opinion that Dr. Shafa's pellet practice was fraudulent.

3

for the jury to understand the effectiveness of Naltrexone (a not particularly well-known medication to those outside the field of substance abuse treatment ) in combating opioid addiction; the pharmacological properties of Naltrexone (which is non-narcotic) ; the importance of informed consent in treating with Naltrexone; the use of Naltrexone pellet implants in patients with opioid use disorder and how implants can be used in the treatment and management of opioid addiction; the potential benefits of medications , such as Naltrexone ( e.g., management of a patient's quality of life, as described in discovery materials); and the properties of Naltrexone, the expected duration of effectiveness per modality, and why and how the duration of effectiveness can vary from patient to patient.

Under the Federal Rules of Evidence, Dr. Saleh is indeed a witness who is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  The above discussion "demonstrate[s] to the court **that it is more likely than not** that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Id.; see Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 25 (1st Cir. 2006).

In conclusion, Dr. Saleh's work at the MGH's West End Clinic alone qualifies him as an expert witness in this case.  The West End Clinic is an outpatient facility for those with substance use disorders and co-occurring mental health disorders. While at that Clinic, Dr. Saleh was involved in a wide range of outpatient therapies, including intensive outpatient programs, individual, family and group therapy, treatment planning and medication treatment management. While there for four years, Dr. Saleh treated hundreds of patients with substance use disorders and

prescribed Naltrexone and various other medications for those substance use disorders. That he may not have treated with Naltrexone pellet implants does not mean he in not qualified to testify about the physiology of Naltrexone in any modality of administration , as well as its effectiveness, sustainability/duration, and why pellet implants are viewed as efficacious for treating chronic durg use disorders.

The Government's late attack against the testimony of the defense experts is based upon an unreasonably narrow interpretation of Fed. R. Evid. 702. Such a challenge to this testimony only raises matters of weight rather than admissibility. For example, if this court finds it more likely than not that Dr. Saleh has a sufficient basis to support an opinion, the fact that he has not read every single study that exists will raise a question of weight and not admissibility. Just because the experts for both sides come to different conclusions based on contested sets of facts, the Rules do not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. Rule 702 only requires that the expert's knowledge "help" the trier of fact to understand the evidence or to determine a fact in issue. Applying a higher standard than helpfulness to otherwise reliable expert testimony is "unnecessarily strict." Committee Notes on Rules—2011 Amendment, n.1.

Dr. Saleh's proposed testimony is clearly "…relevant to the task at hand" and helpful to the jury in its deliberations. United States v. Lopez–Lopez, 282 F.3d 1, 14 (1st Cir. 2002) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).

**Dated**: February 4, 2024    Respectfully submitted,
RAHIM SHAFA
By and through his attorneys,

 /s/ *R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.: (857) 991-1945
Fax: (857) 265-3184
brad@bradbaileylaw.com

NAHID TORMOSI
By her attorneys

 /s/Raymond Sayeg
Raymond Sayeg, Jr., BBO# 555437
Krattenmaker O'Connor & Ingber, P.C.
One McKinley Square, 5th Floor
Boston, MA 02109
Tel. (617) 523-1010
Facsimile (617) 523-1009
rsayeg@koilaw.com

**Certificate of Service**

I, R. Bradford Bailey, hereby certify that on this the 4th day of February, 2024, I caused a true copy of the foregoing *Defendant's Further Motion to Permit Expert Testimony* to be served upon all necessary parties to this matter by virtue of electronically filing the same via the CM/ECF system.

 /s/ *R. Bradford Bailey*
R. Bradford Bailey

6

# EXHIBIT A

1.) Dwyer GR, Saleh FM, Grudzinskas A. Female Sexual Offending: The Impact of Substance Abuse. Poster presented at the American Academy of Psychiatry and the Law, 37th Annual Meeting, Chicago, October 27, 2006.

2.) 2009, Relationship between substance abuse and violence examined, Lecturer, Massachusetts General Hospital, Harvard Medical School

3.) 2010, Violence Risk Assessment in the Psychiatric Population, Lecturer, Massachusetts General Hospital, Harvard Medical School

4.) Saleh F. Stathopoulou G, Ward N. Prostitution and Substance Use? Prevalence & Treatment. Poster presented at the American Academy of Psychiatry and the Law, 40th Annual Meeting; Baltimore, Maryland; October 30, 2009.

5.) 2010 Relationship between substance abuse and violence examined, Brigham and Women's Hospital, Partners Addiction Psychiatry Fellowship, Boston, MA,

6.) 2010 The relationship between the use of drugs and violence, Law and Psychiatry Service, Massachusetts General Hospital, Harvard Medical School

7.) 2010 Mental Illness and Violence: A Brief Overview West End Clinic and Case Presentation, Massachusetts General Hospital, Boston, MA

8.) 2010, Substance Abuse and Violence: Involuntary Commitment for Substance Abuse Treatment, Lecturer, Massachusetts General Hospital, Harvard Medical School, Substance abuse fellows and medical students, One hour session

9.) 2011 Violence Risk Assessment in the Massachusetts General Hospital, Dually-Diagnosed Population, Harvard Medical School, Lecturer

10.)     12/2012 Course on Sexual and Non-Sexual Beth Israel Deaconess Medical, Violence Risk Assessment & Risk Center, Management Harvard Longwood Psychiatry Residency, Harvard Medical School, One to one-and-a-half hour session, 1st session: Problematic Sexual, Behavior in the Inpatient Psychiatric Setting (10/18/2012), 2nd session: Violence and Aggression Defined (11/15/2012), 3rd session: Violence Risk Assessment (11/29/2012), 4th session: Treatment & Risk Management (12/13/2012)

11.)     02-06/2013 Course on Sexual and Non-Sexual Beth Israel Deaconess Medical Center, Violence Risk Assessment & Risk Management Harvard Longwood Psychiatry Residency, Harvard Medical School, 5th session: Case Conference – mental illness, substance abuse, and suicide (04-26-2013)

12.)     7-11/2013 Course on Sexual and Non-Sexual Beth Israel Deaconess Medical Violence Risk Assessment & Risk Center Management Harvard Longwood Psychiatry Residency, Harvard Medical School

13.)     12-/2013 Ongoing Course: Violence Risk Beth Israel Deaconess Medical, Assessment & Risk Center, Harvard Medical School

14.)     Management Harvard Longwood Psychiatry Residency, Harvard Medical School – attended by residents and Harvard Medical School students

15.)     2019 Management of Substance Withdrawal and BIDMC, Forensic Psychiatry Service, its relationship to Criminal Responsibility Boston, MA

16.)     2023 Drugs, synthetics, and the insanity defense. BIDMC, Forensic Psychiatry Service, Boston, MA

# EXHIBIT B

1.) John Comeau v. SORB - SORB Hearing - October 3, 2023

2.) Commonwealth v. Matthew Lariviere Fall River Superior Court – June 1, 2023

3.) Commonwealth v. John Larace Franklin Superior Court -1-24-2023

4.) In re the Detention of: RUPP FREECE, Respondent. NO. 18-2-00903-2

   STATE OF WASHINGTON LEWIS COUNTY SUPERIOR COURT - 5-13-2021; 5-14-2021

5.) State of Washington vs Shane Skelton

   SVP proceedings June 8 and 9, 2022 - King County

# EXHIBIT C

1. AJP CME April 2022 - Effects of County-Level Opioid Dispensing Rates on Individual-Level Patterns of Prescription Opioid and Heroin Consumption: Evidence From National U.S. Data

2. AJP CME: December 2022 - Naltrexone-Bupropion and Behavior Therapy, Alone and Combined, for Binge-Eating Disorder: Randomized Double-Blind Placebo-Controlled Trial

3. AJP CME: February 2023 - Project Harmony: A Meta-Analysis With Individual Patient Data on Behavioral and Pharmacologic Trials for Comorbid Posttraumatic Stress and Alcohol or Other Drug Use Disorders

4. AJP CME: January 2022 - Prevalence and Correlates of Cannabis Use and Cannabis Use Disorder Among U.S. Veterans: Results From the National Epidemiologic Survey on Alcohol and Related Conditions (NESARC-III)

5. AJP CME: January 2022 - The Impact of Alcohol and Other Substance Use Disorders on Mortality in Patients With Eating Disorders: A Nationwide Register-Based Retrospective Cohort Study

6. AJP CME: June 2023 - Opioid Prescribing and Suicide Risk in the United States

7. AJP CME: June 2023 - Racial and Ethnic Bias in the Diagnosis of Alcohol Use Disorder in Veterans

8. AJP CME: June 2023 - Transition From Substance-Induced Psychosis to Schizophrenia Spectrum Disorder or Bipolar Disorder

9. AJP CME: March 2023 - Moderate Alcohol Consumption and Depression: A Marginal Structural Model Approach Promoting Causal Inference

10. AJP CME: May 2022 - Long-Term Cannabis Use and Cognitive Reserves and Hippocampal Volume in Midlife

11. AJP CME: November 2022 - Defining Recovery From Alcohol Use Disorder: Development of an NIAAA Research Definition

12. AJP CME: October 2022 - Flexible Buprenorphine/Naloxone Model of Care for Reducing Opioid Use in Individuals With Prescription-Type Opioid Use Disorder

13. AJP CME: June 2023 - Racial and Ethnic Bias in the Diagnosis of Alcohol Use Disorder in Veterans

14. AJP CME: December 2022 - Naltrexone-Bupropion and Behavior Therapy, Alone and Combined, for Binge-Eating Disorder: Randomized Double-Blind Placebo-Controlled Trial

15. AJP CME: December 2023 - Adult Mental Health, Substance Use Disorders, and Functional Outcomes of Children Resilient to Early Adversity